# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

TIEN VO,

    Petitioner,

  v.

MINGA WOFFORD, Facility Administrator at Mesa Verde Detention Center, et al.,

    Respondents.

Case No. 1:25-cv-01530-JLT-SKO (HC)

**FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS**

**[21-DAY DEADLINE]**

Petitioner is an immigration detainee proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). For the reasons detailed below, the Court will RECOMMEND the petition be GRANTED.

## BACKGROUND

Petitioner is a citizen of Vietnam who came to the United States when he was 6 years old as a refugee or humanitarian parolee in 1980. (Docs. 1 at 9; 9-1 at 46.) He then became a lawful permanent resident (a "green card" holder). (Docs. 1 at 9; 9-1 at 46.)

On December 11, 1992, Petitioner was convicted of theft in violation of California Penal Code § 484 in the Superior Court of California, County of San Mateo. (Doc. 9-1 at 8.) On November 12, 1993, Petitioner was convicted of attempted robbery in violation of California Penal Code § 664/212.5 in the Superior Court of California, County of San Mateo, and sentenced to two years in prison. (Doc. 9-1 at 17.) On March 29, 1994, Petitioner was convicted of preventing a

1  victim report in violation of California Penal Code § 136.1(B)(1) in the Superior Court of
2  California, County of San Mateo, and sentenced to two days in jail. (Doc. 9-1 at 8.) On May 5,
3  1995, Petitioner was convicted of battery with serious bodily injury in violation of California Penal
4  Code § 243(d) in the Superior Court of California, County of San Francisco, and sentenced to four
5  years prison. (Doc. 9-1 at 27.) On May 5, 1999, Petitioner was convicted of accessory in violation
6  of California Penal Code § 32 in the Superior Court of California, County of San Francisco, and
7  sentenced to 364 days in jail. (Doc. 9-1 at 10.)

8        On February 2, 2000, Petitioner was placed in removal proceedings and charged with
9  removability under Immigration and Nationality Act ("INA") § 237(a)(2)(A) as an alien convicted
10 of an aggravated felony. (Doc. 9-1 at 3, 37.) On March 20, 2000, an Immigration Judge ("IJ")
11 ordered Petitioner removed to Vietnam. (Doc. 9-1 at 3, 32.) On that same date, the United States
12 Immigration and Naturalization Service ("INS") requested a travel document from Vietnam. (Doc.
13 9-1 at 3.) On July 31, 2000, INS released Petitioner pending removal on an order of supervision
14 ("OSUP"). (Doc. 9-1 at 3.) Petitioner remained under an order of supervision and did not commit
15 any crimes for the next 25 years. (Doc. 9-1 at 3.) Petitioner's challenges to the removal order and
16 his applications for relief have all be denied. (Doc. 9-1 at 3-4.)

17       On or about July 17, 2025, Vietnam issued Petitioner a Certificate of Visa Exemption, which
18 is valid until July 17, 2025. (Doc. 9-1 at 43.) The exemption permits Petitioner to make multiple
19 entries into Vietnam, provided the stay does not exceed 180 days. (Doc. 9-1 at 43.)

20       On September 5, 2025, Immigration and Customs Enforcement ("ICE") officers re-detained
21 Petitioner during a scheduled check-in pursuant to his OSUP. (Docs. 1 at 8; 9-1 at 50.) At the time
22 of his re-detention, the Government represents that Petitioner was provided with a Notice of
23 Revocation of Release (the "Notice"), which stated the following:

> This letter is to inform you that your case has been reviewed and it has been determined that you will be kept in the custody of [ICE] at this time. This decision has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case. . . .

28 (Doc. 9-1 at 50.)

2

1    On September 25, 2025, three weeks *after* Petitioner was re-detained, the Government requested travel documents from Vietnam. (Docs. 9 at 3; 9-1 at 4.) To date, Vietnam has not issued a travel document, and the travel document request was only recently forwarded to the Attaché for further processing on December 9, 2025. (Doc. 9-1 at 4.) Petitioner currently remains in ICE custody.

On November 10, 2025, Petitioner sought his release though a writ of habeas corpus on five grounds: (1) Petitioner re-detention without changed circumstances violated his due process rights; (2) Respondents failed to properly notify Petitioner of the reasons for his detention in violation of 8 C.F.R. § 241.13(i)(3); (3) Respondents violated the INA and applicable regulations by re-detaining Petitioner subsequent to the ninety (90) day removal period without an individualized determination that Petitioner is a danger to the public or a flight risk; (4) Petitioner's detention is unlawfully indefinite under Zadvydas v. Davis, 533 U.S. 678 (2001), and 8 U.S.C. § 1231; and (5) ICE may unlawfully seek to remove him to a third country without notice and an opportunity to be heard.  (Doc. 1 at 31-36).

On December 15, 2025, Respondents filed a responsive pleading opposing the motion for TRO. (Doc. 9.) Petitioner filed a reply on December 19, 2025. (Doc. 10.)

The Court will begin and end its review with Petitioner's claims regarding the manner in which his re-detention was carried out, as Respondents' revocation of Petitioner's OSUP and subsequent re-detention violated his statutory and constitutional rights.

**DISCUSSION**

**A. Jurisdiction**

Before turning to the merits, the Court must address jurisdiction. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577, 583 (1999).  Courts have long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C § 2241(c)(3).  In doing so, we carry out the "historic purpose of the writ," namely "to relieve detention by executive authorities without judicial trial." Zadvydas, 533 U.S. at 699.   The Supreme Court has consistently "rejected" any suggestion that section 1252(g) covers all claims arising from deportation proceedings or imposes a general

3

1  jurisdictional limitation. Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19
2  (2020). Had Petitioner sought to challenge the Government's decision to execute his removal
3  order, it would bar this Court's review. But because Petitioner's due process claim contests only
4  his detention resulting from violations of the Government's mandatory duties under certain
5  statutes, regulations, and the Constitution, the Court has jurisdiction to determine the lawfulness
6  of Petitioner's detention. See Arce v. United States, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e
7  have limited [section 1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney
8  General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal
9  orders.").

**B. Due Process**

Upon review, the Court finds that the Government has violated its own regulation, 8 C.F.R. § 241.13. Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

First, to revoke a removable alien's release under section 241.13(i)(2), ICE must determine that the alien is significantly likely to be removed in the reasonably foreseeable future "on account of changed circumstances."[1] § 241.13(i)(2). The Government alleges it has assessed that changed circumstances will result in Petitioner's removal to Vietnam in the reasonably foreseeable future. (See Doc. 9 at 50). "While that may certainly be the case now, § 241.13(i)(2) requires that this determination is made *before* the removable alien has had his release revoked." Tran v. Noem, No. 25-cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (emphasis added); see also Sphabmixay v. Noem, No. 25CV2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct.

---

[1] The Court notes that section 241.13(i)(1) provides another avenue for the Government to revoke release under section 241.13 in instances where an alien "violates the conditions of release." But nowhere in the record does the Government purport to rely on this authority for the September 5, 2025, revocation of Petitioner's release, so the Court will not address this provision.

4

30, 2025); Phakeokoth, v. Noem, No. 3:25-CV-02817-RBM-SBC, 2025 WL 3124341, at *5 (S.D. Cal. Nov. 7, 2025); Nguyen, v. Noem, No. 25CV2792-LL-VET, 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) ("However, courts 'have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.. . . . This is so even when [] the Government has obtained a petitioner's travel document back to his or her country of origin after their re-detainment." (quoting Truong v. Noem, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025)).  Here, the record does not show that a changed-circumstances determination was made *at or before* Petitioner's re-detention on September 5, 2025.  Instead, the record shows that the Government did not even submit a request to Vietnam for travel documents until September 25, 2025 —*three weeks after* re-detaining Petitioner.[2]  (Doc. 9 at 3).  And, to the extent that the Government advances an argument that this kind of determination may be supported by evidence showing a general change in a country's policy of accepting removable aliens on a case-by-case basis, such arguments have been repeatedly rejected.  See, e.g., Phan v. Beccerra, No. 2:25-CV-01757-DC-JDP, 2025 WL 1993735, at *4 (E.D. Cal. July 16, 2025) ("Respondents contention that Petitioner's removal is reasonably foreseeable because removals to Vietnam are in fact occurring is unpersuasive" where "[p]re-1995 Vietnamese immigrants may be repatriated to Vietnam on 'a case-by-case basis'" and Vietnam has "discretion whether to issue a travel document to any individual." (quoting Hoi Thanh Duong v. Tate, No. 24-cv-04119-H, 2025 WL 933947, at *4 (S.D. Tex. Mar. 27, 2025))).  Therefore, the Court concludes based on this record that if ICE assessed a likelihood of Petitioner's removal before revoking his release, it could not have been "*on account of*" legally relevant changed circumstances pursuant to section 241.13(i)(2).  With "no evidence of an actual determination of changed circumstances that justified the initial revocation of [Petitioner's] release," the Court finds the Government has violated section 241.13(i)(2).  See, e.g., Sphabmixay, 2025 WL 3034071, at *2 (finding the same).

---

[2] To the extent that Respondent's rely on Vietnam having issued a Certificate of Visa Exemption on July 17, 2025, the position is untenable. The visa exemption permits Petitioner to enter Vietnam, but only for a period up to 180 days. (Doc. 9-1 at 43.) It does not allow for permanent removal to Vietnam. (Id.) Moreover, according to Petitioner's expert Dr. Thao Ha, visa exemptions are provided only to non-citizens for the purpose of temporary travel to Vietnam for a specific purpose; they are never used in the deportation context as a form of travel document. (Doc. 10-3 at 6.)

5

1      Second, even if the Government had made a determination based on legally sufficient "changed circumstances," the Court finds the Government also violated the section 241.13(i)(3) notice requirement. Section 241.13(i)(3) sets forth "revocation procedures" governing revocation carried out pursuant to this section. To revoke a removable alien's release under section 241.13(i)(3), an alien must "be notified of the reasons for revocation of his or her release" and those reasons must be "stated in the [written] notification." 8 C.F.R. § 241.13(i)(3); see Tran, 2025 WL 3005347, at *3 (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release").

Based on the record before the Court, ICE represents that it provided sufficient written notice to Petitioner on the day of his arrest.[3] (See Doc. 9 at 3; 9-1 at 50). That Notice states the Government "determined that there is a significant likelihood of removal in the reasonably foreseeable future." (Doc. 9-1 at 50). This notice fails to comport with the requirements of section 241.13. As noted by Petitioner, the document also appears to be a canned boilerplate form used to unilaterally revoke many deportee's OSUPs without any specific analysis of the deportee's case. (Doc. 10 at 7.) Thus, there is little indication that Respondents made a specific inquiry into Petitioner's case before revoking his OSUP.

Additionally, "[s]imply [stating] that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough." Phakeokoth, 2025 WL 3124341, at *4 (quoting Sarail A. v. Bondi, 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *10 (D. Minn. 2025)). "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition." Id. (quoting Sarail A., 2025 WL 2533673, at *10). The Notice the Government purports to have provided Petitioner provides neither the what nor the why. (See Doc. 9-1 at 50).

Petitioner correctly points out that the Notice of Revocation of Release ("NRR") is incomplete and lacks material information. (Doc. 10 at 8.) A complete NRR should contain

---

[3] However, the Court observes that the Notice does not bear Petitioner's signature confirming receipt or proof of service.

specific reasons for revocation of the OSUP as well as an explanation of rights and proof of service on the detainee. ICE's conclusory explanation for revoking Petitioner's release "did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at [any] post-detention informal interview," as required under section 241.13. Diaz, 2025 WL 2581575, at *8 (citing Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing.")); see also McSweeney v. Warden of Otay Mesa Det. Facility, Case No.: 3:25-cv-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (granting habeas petition because "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons").

Finally, even if the Court found the Government had made a legally sufficient determination of "changed circumstances" and that the Notice was sufficient under section 241.13(i)(3), the Court finds the Government also violated section 241.13(i)(3)'s opportunity to be heard requirement. In addition to the notice provision, section 241.13(i)(3) requires ICE to "promptly," after re-detainment, conduct "an initial informal interview" to "afford the alien an opportunity to respond to the reasons for revocation." Petitioner contends that after detention, Respondents "have not timely provided Petitioner with an initial interview or an opportunity to respond to the reasons for revocation." (Doc. 1 at 32.) The Government provides no evidence that Petitioner was promptly provided an informal interview upon revocation of release as required by section 241.13(i)(3). Respondents suggest that ICE's November 25, 2025, post-order custody review satisfies the requirement that it provide a prompt, informal interview to afford Petitioner an opportunity to respond to the reasons for revocation. (Docs. 9 at 8; 9-1 at 4.) A custody review conducted *nearly three months* after detention cannot be considered an "initial informal interview" conducted "*promptly after his or her return* to Service custody." See 8 C.F.R. § 241.13.(i)(3). The Court, therefore, again finds the Government violated Petitioner's due process rights by not complying with its own rule under section 241.13(i)(3). See Tran, 2025 WL 3005347, at *3 (finding the same); see also Grannis v. Ordean, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."); Niz-Chavez v. Garland, 593 U.S.

155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

Courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." Truong v. Noem, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). Even if the Government were to obtain a travel document from Vietnam subsequent to re-detention, Petitioner should be entitled to release. Id. at *1–6 (granting habeas and releasing the petitioner with a deportation order back on supervision when the respondents failed to comply with § 241.13(i) and § 241.4(l) despite later securing travel documents for his country of origin); Tran, 2025 WL 3005347, at *1–4 (same); Sphabmixay, 2025 WL 3034071, at *3; Phakeokoth, 2025 WL 3124341, at *5 ("Respondents also fail to specify whether ICE requested travel documents for Petitioner before or after his arrest. Thus, ICE's revocation of Petitioner's release does not appear to have been 'on account of' changed circumstances."). This Court should follow suit.

Because the Government was required to, but failed to comply with section 241.13(i) when it revoked Petitioner's supervised release on September 5, 2025, issuing a writ to reinstate that release is warranted. This should be "without prejudice" to the remedies that the Government may otherwise have, namely their readiness to deport Petitioner to Vietnam in the coming weeks. See Tran, 2025 WL 3005347, at *3. Given Petitioner's "apparently unblemished record" the last 25 years and his three and a half months of unlawful detention, "Respondents may exercise their discretion to allow him to say goodbye to his family, settle his affairs, and report for his removal." See id.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS the Petition for Writ of Habeas Corpus be GRANTED and the Government be ORDERED to immediately release Petitioner from custody on the September 5, 2025, revocation of release and arrest. Petitioner should be directed to comply with all conditions that were in effect before his September 5, 2025, re-detainment.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the

Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **December 22, 2025**              /s/ *Sheila K. Oberto*
                                            UNITED STATES MAGISTRATE JUDGE